IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LUCINDA CIDDIO LEYBA,**

      **Plaintiff,**

v.                                             Civ. No. 98-494 JP/DJS

**JANET RENO, United States
Attorney General, DEPARTMENT
OF JUSTICE, and UNITED STATES
MARSHALS SERVICE,**

      **Defendants,**

**and**

**MARY FRANCIS VARGAS, IDA SANCHEZ,
MARIA ELENA GALLEGOS,
ANGELA CARILLO, and RUBEN TOYOS,**

      **Plaintiffs,**

v.                                             Civ. No. 98-495 JP/RLP

**JANET RENO, United States
Attorney General, DEPARTMENT
OF JUSTICE, and UNITED STATES
MARSHALS SERVICE,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER**

      Plaintiffs are employees or former employees of Defendants who claim to have been sexually harassed by Deputy United States Marshal Scott Demro while he was employed by the Defendants. On April 27, 1998, Plaintiffs Vargas, Sanchez, Gallegos, Carillo, and Toyos filed

their original Complaint in this court in Civ. No. 98-494 JP/RLP. Plaintiff Leyba filed her separate original Complaint in Civ. No. 98-495 JP/DJS the same day. On September 23, 1998, I entered an Order consolidating the two cases. On December 18, 1998, despite the fact that the cases had been consolidated, Defendant filed two separate motions to dismiss, or, in the alternative, for summary judgment (Doc. Nos. 8 and 23).[1]

At a motion hearing held May 4, 1999, John Hall and Ashley Strauss represented the Plaintiffs, and Phyllis Dow represented the Defendants. Counsel argued the merits of Defendants' two pending motions. After careful consideration of the counsel's arguments, the law, and the briefs, I conclude that Defendants' motion to dismiss Plaintiff Leyba's claims (Doc. No. 8) should be granted, and Defendants' motion to dismiss Plaintiffs Vargas', Sanchez', Gallegos', Carrillo's, and Toyos' claims (Doc. No. 23) should be granted in part and denied in part.

**I.    Legal Standard**

In considering a motion to dismiss for failure to state a claim, the court must liberally construe the pleadings, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984). A complaint may be dismissed only if it appears to a certainty that the plaintiff can prove

---

[1] At the May 4, 1999 hearing, counsel for the Defendants stated that despite their formal titles, the two pending motions should be addressed primarily under Rule 12(b) and not under Rule 56. Because I considered materials outside the pleadings in evaluating Defendants' motion to dismiss Plaintiff Leyba's Title VII claims for failure to exhaust administrative remedies (Part II.A, *infra*), Defendants' motion to dismiss Plaintiff Sanchez' tort claims for failure to exhaust administrative remedies (Part III.A, *infra*), and Defendants' motion to dismiss all Plaintiffs' claims under the discretionary function exception to the Federal Tort Claims Act (Part III.C, *infra*), I treat those portions of the motion as motions for summary judgment under Rule 56.

no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Thus, "[a]ll well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." Swanson v. Bixler, 750 F.2d at 813.

Summary judgment is appropriate when the moving party shows that there is no genuine issue of material fact and movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which movant believes demonstrates absence of genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. See Bacchus Indus. Inc. v. Arvin Indus. Inc., 939 F.2d 887, 891 (10th Cir. 1991). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. Id. In deciding a motion for summary judgment, the district court may not make factual or credibility determinations or weigh the evidence. See, e.g., Hirase-Doi v. U.S. West Communications, 61 F.3d 777, 785 n.4 (10th Cir. 1995) ("[C]redibility determinations should not be made on summary judgment."); Concrete Works of Colorado, Inc. v. City and County of Denver, 36 F.3d 1513, 1518 (10th Cir. 1994) ("At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter."), cert. denied, 514 U.S. 1004 (1995).

## II.     Plaintiff Lucinda Leyba's Claims

Plaintiff Lucinda Leyba was employed as a Deputy U.S. Marshal in the District of New Mexico from 1991 until June of 1996. Leyba asserts six claims against the Defendants: (1) one claim of sexual harassment under Title VII on behalf of herself and a purported class of employees who were sexually harassed by Scott Demro; (2) two claims of negligence, one of which appears to be a claim of unsafe work environment; (3) one claim of negligent supervision; (4) one claim of negligent retention, and; (5) one claim of negligent training.

### A.     *Motion for summary judgment on Count I for failure to exhaust administrative remedies under Title VII for both individual and class claims*

Administrative regulations require an employee who believes he or she has been discriminated against to contact an EEO counselor within 45 days of the act of discrimination. 29 C.F.R. § 1614.105(a)(1). The period of time for contacting a counselor commences when facts that would support a charge of discrimination were apparent or should have been apparent to a person with a reasonably prudent regard for his rights. Davis v. United States Postal Serv., 142 F.3d 1334, 1339 (10th Cir. 1998). In this case, Plaintiff resigned from her federal employment on June 2, 1996 but did not consult with an EEO counselor about harassment by Scott Demro until April 4, 1997, ten months later. Consequently, Defendants argue that both Plaintiff's individual and class discrimination claims should be dismissed for failure to exhaust administrative remedies.[2]

Plaintiff acknowledges that she did not meet the 45 day requirement, but nevertheless she

---

[2] Defendants also attach a form, signed by the Plaintiff, in which she acknowledged watching a video titled "It's Against the Law: Sexual Harassment in the Workplace." They argue that this shows that Plaintiff was aware of the need to contact an EEO counselor within 45 days. See Defendants' Reply Brief, Exhibit A.

argues that equitable estoppel should apply to toll the limitations period. She cites <u>Irwin v. Department of Veterans Affairs</u>, a case brought against the United States under Title VII, where the Supreme Court stated that equitable tolling of the statute of limitations was available in certain narrow circumstances:

> Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or *where the complainant has been induced or tricked by his adversary's misconduct* into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

<u>Irwin v. Department of Veterans' Affairs</u>, 498 U.S. 89, 95-96 (1990) (internal citations and footnotes omitted) (emphasis added). Plaintiff contends that the equitable tolling doctrine should apply for two reasons.

First, Plaintiff Leyba argues that the limitations period should be equitably tolled because Rede Franco, a case agent from the OIG, told her not to file any complaints or actions until the OIG's investigation of Demro had been completed. This claim is supported by Franco's affidavit, which states "I instructed all the plaintiffs not to file any complaints or actions until the Office of Inspector General investigations were completed." Affidavit of Rede Franco, Plaintiff's Exhibit C. On its face, this allegation appears to satisfy <u>Irwin</u>'s requirement that a plaintiff be "induced" by the government not to file her claim. However, Rede Franco's affidavit does not specify *when* he instructed Plaintiff that she should wait to file her complaint.

Defendant argues that the filing period ran on July 17, 1996—forty five days after Plaintiff resigned on June 2, 1996. At the May 4, 1999 hearing, counsel for the Plaintiff conceded that the

5

forty five day period had already expired *before* Rede Franco instructed Plaintiff not to file a complaint. Consequently, Defendants contend that Franco's instruction to Plaintiff that she wait to file her complaint was harmless, because the deadline had already passed.

Plaintiff responds that she did not file her administrative complaint within the forty five day period, and in fact waited ten months to do so, because she was fearful of and intimidated by Scott Demro. In her Complaint, Plaintiff alleges that "Demro maintained an environment of harassment and physical intimidation, including threatening Plaintiff and others with adverse consequences if anyone reported him to his superiors or [to] the EEOC." Plaintiff's Response Brief at 2. In Paragraph 91 of her original Complaint, Plaintiff Leyba also alleges that Scott Demro threatened Marshals Service employees and throughout the Complaint Plaintiff alleges that Demro maintained a general atmosphere of intimidation.

In this case, the forty five day tolling period began to run *after* Plaintiff left her employment with the Marshals Service. Plaintiff has admitted that Rede Franco did not ask her to refrain from filing a complaint until *after* the forty five day period had expired, so his request cannot form the basis of a decision to equitably toll the limitations period. Plaintiff Leyba's other argument is that she feared reprisal by Demro if she filed an EEO complaint against him. Even assuming that a general fear of reprisal is enough to equitably toll the limitations period under Irwin—an issue on which Plaintiff presents no legal authority—it seems dubious that such a fear would be sufficient to toll the limitations period after a plaintiff has left her employment and is no longer under the authority of the harasser or even in his presence on a daily basis. Consequently,

6

Defendants' motion to dismiss Plaintiff Leyba's individual and class claims[3] under Title VII should be granted.

### B. *Motion to dismiss Counts II through VI based on the exclusivity of Plaintiff Leyba's remedy under Title VII*

Title VII is the exclusive remedy for federal employees' complaints of discrimination based on sex. Brown v. General Servs. Administration, 425 U.S. 820, 835 (1976). Because Plaintiff's tort claims are based on the same set of allegations as her Title VII claim, Defendants argue that those tort claims are barred.[4] Relying on Belhomme v. Widnall, 127 F.3d 1214, 1217 (10th Cir. 1997), Defendants contend that Plaintiff's exclusive remedy is under Title VII and therefore her tort claims (Counts II through VI) should be dismissed.

Where the harm suffered by a federal employee is so "highly personal" such that it goes beyond sex discrimination, then Title VII is not the exclusive remedy for her claims. In Brock v. United States, 64 F.3d 1421, 1423-24 (9th Cir. 1995), the Ninth Circuit court of Appeals declined to dismiss a tort claim brought by a plaintiff who was raped and sexually assaulted by her supervisor. The court reasoned that while the plaintiff's allegation that her coworker had raped

---

[3] Because Plaintiff's own Title VII claim is time-barred, she cannot serve as the representative of a purported class of plaintiffs.

[4] In their supporting brief, Defendants cited Pfau v. Reed, in which the Fifth Circuit Court of Appeals expressly refused to follow Brock. 125 F.3d 927, 933-34 (5th Cir. 1997) ("So long as the factual predicate of a claimant's non-Title VII claims is the same as the factual predicate for the claimant's Title VII claims against a federal agency, we are bound to conclude that Title VII preempts the non-Title VII claims."). At the May 4, 1999 hearing, counsel for Defendants informed the court that Pfau had been vacated by the Supreme Court and that Defendants were instead relying upon the Tenth Circuit Court of Appeals' decision in Belhomme v. Widnall, 127 F.3d 1214, (10th Cir. 1997).

7

and sexually assaulted her was sufficient to establish a claim of sexual discrimination, that conduct also constituted more than sexual discrimination, and was a "highly personal" wrong for which plaintiff could assert a separate tort claim under the Federal Tort Claims Act. Id. Similarly, in Stewart v. Thomas, 538 F.Supp. 891, 893 (D.D.C. 1982), the plaintiff asserted statutory claims for discrimination under Title VII as well as common law tort claims of assault, battery, and intentional infliction of emotional distress when her supervisor touched her body in a sexual manner, attempted to kiss her, and verbally pressured her to engage in sexual relations. In Brunetti v. Rubin, 999 F.Supp. 1408, 1411-12 (D. Colo. 1998), the District Court for the District of Colorado followed the rationale of Brock and Stewart. In all three of these cases, the courts declined to rule that the plaintiff's tort claims were preempted by Title VII because the alleged torts were based on "highly personal" wrong that amounted to something more than sex discrimination. In this way, Brock, Stewart, and Brunetti are distinguishable from Belhomme v. Widnall, 127 F.3d 1214 (10th Cir. 1997), in which the Tenth Circuit Court of Appeals held that the plaintiff's claim of race discrimination under Title VII preempted his virtually identical claims for race discrimination brought under the Constitution and 42 U.S.C. § 1981. Id. at 1217. The plaintiff's claims in Belhomme were preempted by Title VII because they did not constitute anything more than the race discrimination claims he had alleged under Title VII. See also Schroder v. Runyon, 1 F.Supp.2d 1272, 1279 (D.Kan. 1998), aff'd, 1998 WL 694518 (10th Cir. 1998) (concluding that plaintiff's state law retaliation claim was preempted by Title VII because plaintiff did not assert a highly personal harm).

    The issue, then, is whether Plaintiff Leyba has alleged a harm that is so "highly personal" that it goes beyond mere sex discrimination. In her original Complaint, Plaintiff alleged that Scott

8

Demro made false statements to others that she cleaned his house and purchased him clothing, made sexually explicit comments and jokes to Plaintiff, offensively touched both men and women (including Plaintiff), asked Plaintiff to set him up on dates with women, made threats—some veiled and others explicit—to Plaintiff such as "Your Chief can make or break your career in the Service," "I will squash you like a bug," "I can use my influence to keep you from getting a job in federal law enforcement," and "Don't forget that I write your performance evaluations." Complaint at ¶72-86, 91. At the May 4, 1999 hearing, counsel for the Plaintiff clarified that the offensive touching alleged in the Complaint consisted of Demro placing his hand on Plaintiff's hand or arm, and standing close to her while making sexually suggestive comments. Plaintiff does not allege that Demro touched her breasts or genitals.

     Plaintiff's allegations do not rise to the level of a highly personal harm for which she can assert separate claims under the Federal Tort Claims Act. While reprehensible, Demro's actions as alleged by Plaintiff constitute sexual harassment and nothing more. Plaintiff's claims are unlike those of the plaintiff in Otto v. Heckler, 781 F.2d 754, 757-58 (9th Cir.), as amended by 802 F.2d 337 (9th Cir. 1986), where the plaintiff's supervisor followed, defamed, physically abused, and made harassing phone calls to plaintiff. Similarly, Plaintiff Leyba's allegations are dissimilar to those of the plaintiff in Arnold v. United States, 816 F.2d 1306, 1311 (9th Cir. 1987), who claimed that her supervisor assaulted, battered, falsely imprisoned her, or those in Brock, where the plaintiff's supervisor sexually assaulted and raped plaintiff. Brock, 64 F.3d at 1423. Unlike the Plaintiff in Brunetti, Plaintiff does not allege that Demro called her at home, went to her house on weekends, touched her breasts, lips, and knee, stroked her hair, unbuttoned her clothing, and sent her gifts. Brunetti, 999 F.Supp. at 1410. In short, Plaintiff Leyba does not assert a claim

9

that goes beyond sex discrimination in the form of sexual harassment. Consequently, Plaintiff Leyba's exclusive remedy is under Title VII, and her claims under the Federal Tort Claims Act (Counts II, III, IV, V, and VI) should be dismissed.

*C. Other issues*

Because I have already stated that all of Plaintiff Leyba's claims should be dismissed, I do not reach Defendants' arguments that Plaintiff's Federal Tort Claims Act claims should be dismissed because she failed to name the proper party defendant; because the statute of limitations had expired before she filed her claim; because Demro's acts of sexual harassment were outside the scope of his employment; because Plaintiff's claims are barred by the discretionary function exception to the Federal Tort Claims Act; and because Plaintiff's claims are barred by the assault and battery exception for the Federal Tort Claims Act.

**III. Plaintiffs Vargas', Sanchez', Gallegos', Carrillo's, and Toyos' Claims**

Plaintiffs Vargas, Sanchez, Gallegos, Carrillo, and Toyos have never been employed by the Marshals Service. Plaintiffs allege that when they went to the Marshals Service's offices as business invitees[5], Scott Demro made sexually explicit comments and jokes. Plaintiffs Vargas, Sanchez, Gallegos, and Carrillo also allege that Demro physically touched them in an offensive and sexual manner. The women plaintiffs also allege that they were in "constant immediate

---

[5] Only Plaintiff Gallegos does not allege to have had contact with Scott Demro inside the Marshals Service's offices. Instead, she claims that Demro harassed her at the cafeteria where she worked in the federal building in which the Marshal's Service's offices were located. This issue is addressed in Part III.D, *infra*.

apprehension of being physically assaulted by Demro." Complaint at ¶¶109, 112, 121, 141, 170. Each Plaintiff alleges five claims against Defendants under the Federal Tort Claims Act: negligent supervision and retention of Demro (Counts I and II), negligent training of Marshal's Service personnel (Count III), unsafe working environment (Count IV), and premises liability (Count V).

    A. *Motion for summary judgment on all of Ida Sanchez' Federal Tort Claims Act claims for failure to exhaust administrative remedies*

  A plaintiff suing under the Federal Tort Claims Act must file an administrative tort claim within two years after her claim accrues. 28 U.S.C. § 2401(b); Hart v. Department of Labor, 116 F.3d 1338, 1340 (10th Cir. 1997). Plaintiff Ida Sanchez, who was a student at the University of New Mexico, worked for the Marshals Service until October of 1994. However, Plaintiff Sanchez did not file her administrative tort claim until April 22, 1997, approximately two and a half years after she stopped working for the Marshals Service. Consequently, Defendants argue that her claims should be dismissed for untimeliness.

  Plaintiff Sanchez contends that the limitations period should be tolled under the equitable tolling doctrine because she relied on the advice of a government officer, Rede Franco, who states in his sworn affidavit that interviewed her and asked her not to file a complaint regarding Scott Demro until the OIG had completed its investigation. See Plaintiffs' Exhibit A.

  As explained above, the Supreme Court has crafted the equitable tolling doctrine to apply in situations where a plaintiff has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. Irwin v. Department of Veterans' Affairs, 498 U.S. 89, 95-96 (1990). However, in Irwin, the plaintiff was asserting a claim under Title VII of the Civil Rights

11

Act of 1964, and the court did not indicate whether or not the equitable tolling doctrine was applicable to limitations periods contained in other statutes, such as the two year limitations period set forth in the Federal Tort Claims Act.

The Tenth Circuit Court of Appeals has not addressed the issue of whether Irwin's equitable tolling doctrine is available to plaintiffs suing under the Federal Tort Claims Act.[6] However, since the Supreme Court decided Irwin, three Circuit Courts of Appeals have held that equitable tolling is also available under the Federal Tort Claims Act's statute of limitations. Perez v. United States, 167 F.3d 913 (5th Cir. 1999); Glarner v. United States, 30 F.3d 697 (6th Cir. 1994); Schmidt v. United States, 933 F.2d 639 (8th Cir. 1991). Because I find this weight of authority to be persuasive, I conclude that the equitable tolling doctrine is applicable to claims brought under the Federal Tort Claims Act.

Plaintiff Sanchez alleges that in July of 1996—less than two years after she left her employment with the Marshals Service in October of 1994—Rede Franco, an agent with the Office of the Inspector General, instructed her not to file her administrative claim until he had completed his investigation of Scott Demro. Plaintiffs' Response Brief at 2; Plaintiffs' Exh. A. Unlike Plaintiff Leyba, Plaintiff Sanchez was induced by Rede Franco not to file her complaint *before* the time for filing her administrative claim had expired. Consequently, Plaintiff Sanchez was "induced" by an agent of the government into allowing the filing deadline to pass and her complaint is timely.

---

[6] The Defendant cites the Tenth Circuit's opinion in Anderberg v. United States, in which the court stated, "[t]he limitation period in 28 U.S.C. § 2401(b) is not to be extended for equitable considerations." 718 F.2d 976, 977 (10th Cir. 1983). However, Anderberg was decided seven years before Irwin, and therefore sheds little light on the issue of whether Irwin applies to claims brought under the Federal Tort Claims Act.

12

> B. *Motion to dismiss all Counts for failure to state a claim because Demro was acting outside the scope of his employment*

The Federal Tort Claims Act states that the United States is liable for:

> personal injury or death caused by the *negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment*, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (emphasis added). Plaintiffs have pled that Scott Demro was acting outside the scope of his employment when he physically and verbally harassed them. Consequently, Defendants argue that they cannot be liable under the Federal Tort Claims Act.

However, Plaintiffs respond that they are not suing Defendants in *respondeat superior* for Demro's acts, but rather they are suing for Defendants' own negligent acts and omissions in failing to supervise or terminate Demro. Therefore, it does not matter if Demro was acting outside the scope of his employment, because Marshals Service officials were acting in the scope of their employment in their failure to properly supervise Demro.

Under the express terms of the Federal Tort Claims Act, the United States is liable in tort as if it were a person in accordance with the law of the place where the alleged negligent acts or omissions occurred. The courts in New Mexico have consistently allowed claims against employers for negligent hiring and supervision even when the supervised employee had acted outside the scope of his employment. See, e.g., Los Ranchitos v. Tierra Grande, Inc., 116 N.M. 222, 228 (Ct. App. 1993); Narney v. Daniels, 115 N.M. 41 (Ct. App. 1992); Pittard v. Four Seasons Motor Inn, Inc., 101 N.M. 723, 729 (Ct. App.), cert. quashed, 101 N.M. 555 (1984). Because Plaintiffs allege that Demro's supervisors were acting within the scope of their

13

employment when they failed to terminate or properly supervise Demro (who was not acting within the scope of his employment), and because the law of New Mexico holds employers liable in such situations, Defendants' motion to dismiss on this ground should be denied.

      *C.*      *Motion for summary judgment on all Counts under the discretionary function exception to the Federal Tort Claims Act*

The discretionary function exception states that the Federal Tort Claims Act does not apply to any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The Defendants argue that Plaintiffs' tort claims fall under the Federal Tort Claims Act's discretionary function exception because supervisory decisions regarding federal employment and disciplinary matters are discretionary and are not cabined by statute or regulation. Defendants also contend that Plaintiffs' claims of unsafe working environment and premises liability must also fail because those claims are directly related to the discretionary personnel decisions made by the Marshals Service regarding Scott Demro.

The determination of whether the discretionary function exception applies to a particular act involves a two-pronged analysis. Berkovitz v. United States, 486 U.S. 531, 536-37, 108 S.Ct. 1954, 1958-59 (1988). First, in order for the exception to apply, the act must "involve an element of judgment or choice." Id. at 536, 108 S.Ct. at 1958. Under this first prong, the court must determine whether a specific and mandatory regulation, statute or policy requires a particular course of action. Id. If such a statute or regulation is applicable, there is no discretion

14

involved and the discretionary function exception does not apply. Id. This inquiry is mandated by the language of the exception; conduct cannot be discretionary unless it involves an element of judgment or choice. See Dalehite v. United States, 346 U.S. 15, 34, 73 S.Ct. 956, 967, 97 L.Ed. 1427 (1953) (stating that the exception protects "the discretion of the executive or the administrator to act according to one's judgment of the best course").

If, on the other hand, the government's conduct is not controlled by a such a directive, the court must proceed to the second prong of analysis and determine whether the discretion involved in the governmental act "is the kind that the discretionary function was designed to shield." Berkovitz, 486 U.S. at 537, 108 S.Ct. at 1959. The exception was designed to protect only discretion "based upon considerations of public policy." Id. This interpretation of the exception is based upon Congress' desire to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." United States v. Varig Airlines, 467 U.S. 797, 814, 104 S.Ct. 2755, 2764 (1984).

Under the first prong of the test, it seems clear that hiring, supervision, and retention of an employee involves an element of judgment or choice. However, Plaintiffs do not point to any federal statute or regulation that dictated Defendants' conduct with respect to Demro. They do argue that in two memos to the Department of Justice, Attorney General Janet Reno stated that "sexual harassment is a serious problem" and required that managers take "primary responsibility for ensuring that our workplace is free from harassment." See Plaintiffs' Response Brief, Exhibits B and C. However, these memos from the Attorney General do not constitute a "specific and mandatory regulation, statute or policy."

Therefore, the definitive issue is whether or not the Defendants' decisions in supervising and retaining Demro were of the type that were "based upon considerations of public policy" such that they are shielded from liability under the Federal Tort Claims Act. The parties did not cite any cases that address the issue of the application of the discretionary function exception to a federal agency's supervision and retention of an alleged sexual harasser. However, in Tonelli v. United States, 60 F.3d 492 (8th Cir. 1995), the Eighth Circuit examined a case in which the plaintiffs sued the government for the negligent hiring, supervision, and retention of a postal employee who opened and tampered with plaintiffs' mail. The court noted that "[i]ssues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception." Id. at 496. Nevertheless, the court refused to uphold the district court's dismissal of the claims, reasoning:

> [T]his action involves allegations that the post office failed to act when it had notice of illegal behavior. *Failure to act after notice of illegal action does not represent a choice based on plausible policy considerations.* Consequently, the unresolved notice issue renders summary judgment inappropriate . . ."

Id. (emphasis added). In this case, Plaintiffs have alleged that Demro's supervisors were aware that Demro had violated anti-harassment laws, yet failed to prevent further violations or take any disciplinary action against Demro. Complaint at 67, 68, 93.

I concur with the court in Tonelli that "[f]ailure to act after notice of illegal action does not represent a choice based on plausible policy considerations." When Scott Demro's supervisors became aware that Demro was verbally and physically harassing Marshals Service employees and others, they did not have the discretion to simply refuse to act. In other words, Demro's supervisors had discretion as to the manner in which to discipline or supervise Demro,

16

but they did not have the discretion to simply ignore his transgressions. Consequently, Defendants' motion to dismiss based on the discretionary function exception should be denied.

> D. *Motion to dismiss for failure to state a claim based on the assault and battery exception to the Federal Tort Claims Act*

I defer ruling on this portion of the motion to dismiss at this time.

> E. *Motion to dismiss all claims of unsafe workplace and failure to warn of danger for failure to state a claim (Counts IV and V)*

Defendants contend that Counts IV (unsafe workplace) and V (failure to warn of an unreasonable danger on land) should be dismissed for failure to state a claim. Under New Mexico law, an occupier of premises owes a duty to safeguard each business visitor whom the occupier could reasonably foresee will be injured by a danger that is avoidable through reasonable precautions. Klopp v. Wackenhut Corp., 113 N.M. 153, 157 (1992). First, Defendants note that all of the incidents upon which Plaintiff Gallegos bases her claims took place away from the Marshals Service office, so she cannot state a claim for premises liability. Second, as to all Plaintiffs, Defendants argue that premises liability can only be based upon a dangerous condition of the *land*, not a person. Finally, they contend as to all Plaintiffs that unsafe working conditions and premises liability are the same cause of action.

Plaintiffs respond that "a danger that is avoidable through reasonable precautions" as required by Klopp v. Wackenhut Corp. can include a vicious dog. Castillo v. Santa Fe County, 107 N.M. 204, 207 (1988). Plaintiffs then analogize Scott Demro to a vicious dog with a

17

propensity to harm others.

I find Plaintiffs' analogy to be unpersuasive. Plaintiffs have cited no authority in support of their contention that an occupier of land can be held liable for the actions of a dangerous human being on the land. In addition, Plaintiff Gallegos alleges that Scott Demro harassed her in the cafeteria where she worked. Plaintiff Gallegos does not allege that the cafeteria was controlled or occupied by the Marshals Service, and consequently the Marshals Service could have had no duty to warn Plaintiff Gallegos of any dangerous condition of the land or to provide her with a safe workplace. Consequently, all Plaintiffs' claims for unsafe workplace (Count IV) and failure to warn of danger on land (Count V) should be dismissed.

### F. *Motion to dismiss Plaintiff Toyos' claims under the Feres doctrine*

In Feres v. United States, the Supreme Court stated that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. 135, 146 (1950). Defendants move to dismiss Plaintiff Toyos' claim, arguing that it is barred by the Feres doctrine because he was an active duty member of the U.S. Army assigned to the Marshals Service at the time the incidents alleged in the Complaint occurred.

Plaintiffs did not respond to Defendants' argument in their Response Brief.[7] At the May 4, 1999 hearing, counsel for the Plaintiffs argued that Feres does not bar Plaintiff Toyos' claim because Scott Demro's harassment was an ongoing problem, not an isolated act. Unfortunately,

---

[7] Under D.N.M.LR-Civ. 7.5(b), failure to respond to a motion constitutes consent to grant the motion. Consequently, Defendants' motion to dismiss Plaintiff Toyos' claim could be granted on this ground alone.

counsel for Plaintiff offered no legal authority whatsoever in support of this argument. Consequently, Defendants' motion to dismiss Plaintiff Toyos' claim should be granted.

G.  *Motion to dismiss all Counts for failure to name the proper party-defendant*

The named Defendants in this case are Janet Reno, the Department of Justice, and the U.S. Marshals Service. However, only the United States can be sued under the Federal Tort Claims Act. Aviles v. Lutz, 887 F.2d 1046, 1048 (10th Cir. 1989). Consequently, the Defendants ask that the tort claims in the complaint be dismissed. In response, Plaintiffs request leave to amend their complaint to name the United States as Defendant.

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." Plaintiffs may file their Amended Complaint naming the United States as the party-Defendant no later than September 1, 1999.

**IT IS THEREFORE ORDERED** that:

(1) Defendants' motion for summary judgment on Count I of Plaintiff Leyba's complaint for failure to exhaust administrative remedies (Doc. No. 8) is GRANTED;

(2) Defendants' motion to dismiss Counts II, III, IV, V, and VI of Plaintiff Leyba's complaint because her exclusive remedy is under Title VII (Doc. No. 8) is GRANTED;

(3) Defendants' motion for summary judgment on all of Plaintiff Sanchez' claims for failure to exhaust administrative remedies (Doc. No. 23) is DENIED;

19

(4) Defendants' motion to dismiss all of Plaintiffs Vargas', Sanchez', Gallegos', Carrillo's, and Toyos' claims because Scott Demro was acting outside the scope of his employment (Doc. No. 23) is DENIED;

(5) Defendants' motion for summary judgment on all of Plaintiffs Vargas', Sanchez', Gallegos', Carrillo's, and Toyos' claims under the discretionary function exception to the Federal Tort Claims Act (Doc. No. 23) is DENIED;

(6) Defendants' motion to dismiss all claims of unsafe workplace and premises liability (Counts IV and V) (Doc. No. 23) is GRANTED;

(7) Defendants' motion to dismiss all of Plaintiff Toyos' claims under the Feres doctrine (Doc. No. 23) is GRANTED; and

(8) Plaintiffs Vargas, Sanchez, Gallegos, and Carrillo may file their Amended Complaint reasserting Counts I, II, and III and naming the United States as the party-Defendant no later than September 1, 1999.

_____
**UNITED STATES DISTRICT JUDGE**